*499 UPON A REHEARING EN BANC
BEALES, Judge.
Samuel A. Ervin (appellant) was convicted of possession of marijuana with intent to distribute, in violation of Code § 18.2-248.1.[1] Appellant argues on appeal that the evidence at trial was insufficient to prove beyond a reasonable doubt 1) that he constructively possessed the marijuana with knowledge of its nature and character and 2) that he possessed it with the requisite intent to distribute. A divided panel of this Court held that the evidence was insufficient to prove that appellant had guilty knowledge of the marijuana.[2] See Ervin v. Commonwealth, No. 0861-09-1, 2010 WL 2482314, 2010 Va.App. LEXIS 249 (Va. Ct.App. June 22, 2010). We granted the Commonwealth’s petition for rehearing en banc and stayed the mandate of the panel’s decision. On rehearing en banc, we now lift the stay and affirm appellant’s conviction for possession of marijuana with intent to distribute for the reasons stated below.
I. Background
“Applying familiar principles of appellate review, we will state the facts in the light most favorable to the Commonwealth, the prevailing party at trial.” Williams v. Commonwealth, 278 Va. 190, 191, 677 S.E.2d 280, 281 (2009).
On February 29, 2008, at 8:20 p.m., Portsmouth Officers O’Brien and Rad stopped a vehicle being driven by appellant after the officers observed a traffic violation.[3] Appellant was *500 the sole occupant of the vehicle. Neither officer observed him make any furtive movements during their observations of him. However, as the officers approached the vehicle, “a strong odor of marijuana” was discernible through the car’s open windows.
The officers asked appellant for his driver’s license and for the vehicle’s registration. Appellant gave the officers his driver’s license, which was suspended, but did not produce any registration. The record does not indicate that appellant ever attempted to look for the registration (or help the officers locate it), but instead he simply told the officers that the vehicle was not his.
After detecting the strong odor of marijuana coming from the vehicle and after determining that appellant’s driver’s license was suspended, the officers took appellant into custody and placed him in the police cruiser. The officers then searched the vehicle both for the source of the strong odor of marijuana and for the vehicle’s registration. Using the key that was in the vehicle’s ignition, Officer Rad unlocked the glove compartment. The officers immediately observed two Ziploc bags inside the glove compartment. One of the Ziploc bags held ten knotted plastic bag corners (“baggie corners”) containing marijuana, and the other Ziploc bag held thirteen baggie corners containing marijuana. No smoking devices or drug paraphernalia were found inside the vehicle or in appellant’s possession.
The vehicle belonged to Tiffany Killabrew, the mother of appellant’s daughter. It was Killabrew’s “secondary car,” which she loaned to various people, including appellant, her brother, and her sister. Killabrew testified that appellant borrowed the vehicle sometime between 6:00 and 7:00 p.m. on February 29, 2008.[4]
*501 At trial, Officer Francisco Natal, an expert on the packaging and distribution of narcotics, testified that the marijuana found inside the glove compartment had a street value of over $200. Officer Natal explained that, in his expert opinion, the packaging of this quantity of marijuana was inconsistent with personal use. Furthermore, Officer Natal testified that he knew of no instance where someone possessed twenty-three individual baggie corners of marijuana for personal use.
Appellant testified in his own defense, denying ownership of the marijuana. When asked on cross-examination whether he was familiar with the smell of marijuana, appellant initially replied, “Maybe.” When asked to clarify his answer, appellant then testified, “No, not really. Usually you can smell like — no, not really. I’m not even going to claim that. Not really.”
The trial court denied appellant’s motions to strike and found appellant guilty of possession with intent to distribute, noting that “either [appellant] had been smoking [the marijuana] or he had recently just had somebody in the car who was smoking it, or at least that’s the conclusion that the Court can draw from this evidence.” The trial court continued:
Well, his girlfriend whose car it was, took the stand and didn’t claim any ownership of it. Her only testimony was he used the car regularly and other people did too, so we don’t know who those other people are, they’re not here, they haven’t offered any testimony that they used the car. The only testimony is Mr. Ervin used the car and he was in the car when there was marijuana being used, at least I think you can infer that from the evidence, and he had the key to where the marijuana was locked in the glove compartment.
*502 The trial court also explained that the manner in which the marijuana was packaged proved that appellant possessed the marijuana with intent to distribute it.
II. Analysis
When the sufficiency of the evidence to support a conviction is challenged on appeal, “a reviewing court does not ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Crowder v. Commonwealth, 41 Va.App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). “Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court,” Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004) , “[w]e must instead ask whether ‘any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,’ ” Crowder, 41 Va.App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va.App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). “This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.
Indeed, as we are an appellate court considering the sufficiency of the evidence on appeal, we must review the trial court’s factfinding “ ‘with the highest degree of appellate deference.’ ” Noakes v. Commonwealth, 54 Va.App. 577, 586, 681 S.E.2d 48, 52 (2009) (en banc) (quoting Thomas v. Commonwealth, 48 Va.App. 605, 608, 633 S.E.2d 229, 231 (2006)), aff'd, 280 Va. 338, 699 S.E.2d 284 (2010); see McMillan v. Commonwealth, 277 Va. 11, 18-19, 671 S.E.2d 396, 399 (2009) (“We have stated that ‘[o]n appeal, great deference is given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony.’ ” (quoting Young v. Commonwealth, 275 Va. 587, 590-91, 659 S.E.2d *503 308, 310 (2008))). We may not “ ‘substitute our judgment for that of the trier of fact,’” Wactor v. Commonwealth, 38 Va.App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Commomvealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998)), nor may we “reweigh the evidence,” Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because we have no authority “to preside de novo over a second trial,” Haskins v. Commonwealth, 44 Va.App. 1, 11, 602 S.E.2d 402, 407 (2004). We must defer, instead, to the factfinder’s responsibility “ ‘to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.’ ” Abdullah v. Commonwealth, 53 Va.App. 750, 755, 675 S.E.2d 215, 218 (2009) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789). As the Supreme Court recently stated in Sullivan v. Commonwealth, 280 Va. 672, 701 S.E.2d 61 (2010), this deference to the factfinder’s determinations “applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved.” Id. at 676, 701 S.E.2d at 63-64.
Therefore, under this highly deferential standard of review on appeal, “[t]he judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is ‘plainly wrong or without evidence to support it.’ ” Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005) (quoting Code § 8.01-680); see also Burks v. United States, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) (stating that appellate reversal on grounds of insufficient evidence “will be confined to cases where the prosecution’s failure is clear”). “Practically speaking, this means [the trial court’s] decision cannot be disturbed on appeal unless no ‘rational trier of fact’ could have come to the conclusion it did.” Seaton v. Commonwealth, 42 Va.App. 739, 746, 595 S.E.2d 9, 12-13 (2004) (emphasis added) (citing Kelly, 41 Va.App. at 257, 584 S.E.2d at 447).
A. Possession of the Marijuana
Appellant argues that the evidence at trial failed to establish beyond a reasonable doubt that he knowingly possessed the *504 marijuana in the vehicle’s glove compartment. When considering this issue, the parties agree that the principles of constructive possession are applicable here. Addressing these familiar principles, the Supreme Court of Virginia has held:
In a prosecution for possession of a controlled substance, the Commonwealth must produce evidence sufficient to support a conclusion beyond a reasonable doubt that the defendant’s possession of the drug was knowing and intentional. Burton v. Commonwealth, 215 Va. 711, 713, 213 S.E.2d 757, 758 (1975). Actual or constructive possession alone is not sufficient. Id. at 713, 213 S.E.2d at 759. “The Commonwealth must also establish that the defendant intentionally and consciously possessed it with knowledge of its nature and character.” Id. (citations omitted) (emphasis added). That knowledge is an essential element of the crime.
Young, 275 Va. at 591, 659 S.E.2d at 310; see also Logan v. Commonwealth, 19 Va.App. 437, 444, 452 S.E.2d 364, 368-69 (1994) (en banc) (“Constructive possession may be established by ‘evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.’ ” (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984))).
Appellant does not appear to contest the trial court’s finding that the marijuana recovered from the glove compartment was subject to his dominion and control.[5] However, he argues that the Commonwealth failed to prove beyond a reasonable doubt that he had the requisite guilty knowledge of this marijuana.
*505 The trial court found that appellant’s possession of the marijuana was knowing and intentional, proving that he constructively possessed the marijuana. Young, 275 Va. at 591, 659 S.E.2d at 310. As an appellate court, “it is our duty to look to that evidence which tends to support the verdict” when the sufficiency of the evidence is challenged on appeal. Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961). Therefore, we look to the circumstantial evidence supporting the trial court’s verdict. See Haskins, 44 Va.App. at 6, 602 S.E.2d at 404 (“In drug cases no less than any other, it ‘is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.’ ” (quoting Etherton v. Doe, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004))). “While no single piece of [circumstantial] evidence may be sufficient, the ‘combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.’ ” Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)). In other words, in a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt of a defendant’s guilty knowledge of contraband.
1. Factors Indicative of Guilty Knowledge
This Court’s holding in Coward v. Commonwealth, 48 Va.App. 653, 633 S.E.2d 752 (2006), although not controlling given the very different facts in this case, is a useful guide for determining whether circumstantial evidence is sufficient as a matter of law to prove that a vehicle occupant knowingly and intentionally possessed drugs found in the car. In Coward, the police stopped a Toyota, in which Coward was the passenger, in the middle of the night for an equipment violation. Id. at 656, 633 S.E.2d at 753. As the officer approached the Toyota, he directed the lights on his police car toward the Toyota, and he also used his flashlight to further illuminate the interior of the car. Id. The officer was able to observe a *506 clear plastic bag containing crack cocaine, sitting on the console between the driver’s and passenger’s seats. Id. The driver told the officer that the Toyota belonged to his mother and that he had been driving it all evening. Id. Coward made no statements to the officer. Id. At Coward’s trial, the trial court convicted Coward of possession of cocaine, basing its finding that Coward had guilty knowledge of the cocaine solely on his occupancy of the vehicle and his proximity to the cocaine. Id. at 658, 633 S.E.2d at 754.
On appeal, this Court reversed Coward’s conviction, reiterating the familiar principle that mere occupancy and proximity, although factors to be considered among the totality of the circumstances, are insufficient standing alone to prove a defendant’s guilty knowledge of illegal drugs. Id. Therefore, although mindful of the deferential appellate standard of review in a sufficiency of the evidence case, id. at 657, 633 S.E.2d at 753, this Court held that the evidence at Coward’s trial was insufficient as a matter of law because it “did not establish any other facts or circumstances necessary to draw the legal conclusion that Coward was aware of the presence and character of the cocaine.” Id. at 659, 633 S.E.2d at 754 (emphasis added).
Here, unlike in Coward, the evidence at trial did present other facts and circumstances permitting the trial court to draw the conclusion that appellant was aware of the presence and character of the marijuana in the glove compartment— and these facts and circumstances may be considered in addition to appellant’s occupancy of the vehicle and proximity to the marijuana. Based on the combined force of these concurrent and related circumstances, the trial court’s finding that appellant had guilty knowledge of the marijuana in the glove compartment was not plainly wrong or unsupported by the evidence.
a. The Strong Odor of Marijuana
A defendant’s knowledge of the presence and character of a drug may be shown by evidence of the acts, statements, or conduct of the accused, Garland v. Commonwealth, 225 Va. *507 182, 184, 300 S.E.2d 783, 784 (1983), as well as by “other facts or circumstances” tending to demonstrate the accused’s guilty knowledge of the drug, Williams v. Commonwealth, 42 Va.App. 723, 735, 594 S.E.2d 305, 311 (2004). As the Supreme Court of Virginia recently explained in Young, a “drug’s distinctive odor” can be circumstantial evidence to support a finding that a defendant knew of the nature and character of the substance in his possession. Young, 275 Va. at 591, 659 S.E.2d at 310.
Here, appellant was driving a vehicle that smelled strongly of marijuana — the very same illegal drug discovered in the vehicle’s glove compartment. This odor, which was readily discernible to both officers as marijuana when they approached appellant’s vehicle, would certainly have been apparent to appellant as he sat in the vehicle. The strong and distinctive odor of the drug provided a significant indication to anyone inside (or even near) the vehicle that marijuana was located within the vehicle. See id. at 592, 659 S.E.2d at 311 (distinguishing the facts in Young’s case, where the contents of a pill bottle “gave no indication of their character,” from the facts in Josephs v. Commonwealth, 10 Va.App. 87, 390 S.E.2d 491 (1990), which involved “the odoriferous contents” of a trunk containing marijuana).[6]
*508 Based on the officers’ testimony, the trial court found that the strong marijuana odor emanating from the vehicle was from marijuana that had been smoked. Making a distinction between the smell of burnt marijuana and “fresh” (i.e., not burnt) marijuana, appellant contends that the trial court erroneously inferred that he was aware of the marijuana in the glove compartment, which was fresh, based on the readily discernible smell of burnt marijuana.[7] However, viewing all the evidence in the light most favorable to the Commonwealth, “as we must since it was the prevailing party in the trial court,” Riner, 268 Va. at 330, 601 S.E.2d at 574, the trial court’s finding that appellant had guilty knowledge of the marijuana in the glove compartment is strengthened by the trial court’s finding concerning the marijuana odor.
The trial court not only found that the officers smelled already smoked marijuana, it also found that the marijuana had been recently smoked by appellant or someone in the car with him. The trial court’s finding, which was certainly not unreasonable given the officers’ testimony concerning the strength and obviousness of the marijuana odor as they approached the vehicle, is entitled to deference during appellate review for sufficiency of the evidence. Hancock v. Commonwealth, 12 Va.App. 774, 782, 407 S.E.2d 301, 306 (1991).
*509 Furthermore, Killabrew’s testimony established that appellant took possession of the vehicle between 6:00 and 7:00 p.m., approximately two hours before the traffic stop. Thus, the trial court’s inference that the marijuana detected by the officers must have been smoked — either by appellant or by someone else in appellant’s presence — while appellant was in possession of the vehicle was “reasonable and justified” based on the strength of the odor. Sullivan, 280 Va. at 676, 701 S.E.2d at 63-64. Therefore, the officers’ detection of the strong odor of recently burnt marijuana certainly does not undermine the trial court’s conclusion that appellant was aware of the “fresh” marijuana in the glove compartment.[8] See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (stating that it is the province of the factfinder to draw reasonable inferences from basic facts to ultimate facts). Nothing in this record suggests any other means, in the approximately two hours that appellant had possessed the car, of creating such a strong odor of marijuana that people could readily identify the odor before actually reaching the vehicle.
Therefore, the presence of the strong odor of marijuana from within the vehicle is one factor[9] to consider in this case because it tends “to show or allow [] the trial court to reasonably infer” that appellant was aware of the marijuana in the glove compartment. Coward, 48 Va.App. at 659, 633 S.E.2d at 754. However, the strong odor of marijuana emanating from the vehicle, readily discernible by each of the *510 officers, is not viewed in isolation of the other facts presented by this record on appeal. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). Instead, this factor must be viewed among the totality of the circumstances presented to the trial court. Several additional facts and circumstances in the record here further support the trial court’s finding that appellant was aware of the presence and character of the marijuana discovered in the glove compartment.
b. Appellant’s Sole Possession of the Vehicle and His Possession of the Key to the Glove Compartment
Appellant was in sole possession of the vehicle at the time the marijuana was found. Contra Coward, 48 Va.App. at 656, 633 S.E.2d at 753 (reversing a cocaine possession conviction where Coward was a passenger in a vehicle containing cocaine and where the driver acknowledged that his mother owned the vehicle and that he drove that car all evening). Appellant also possessed the key to the vehicle and its glove compartment and, therefore, was the sole person at that time with means to access the glove compartment containing the marijuana. The trial court, acting as factfinder in this case, was permitted to consider these facts as circumstances further indicating appellant’s guilty knowledge of the marijuana found in the glove compartment.
The Supreme Court’s recent holding in Cordon v. Commonwealth, 280 Va. 691, 701 S.E.2d 803 (2010), is not controlling on the very different facts in this case. In Cordon, a police detective interviewed Cordon while investigating a burglary that occurred at a house on Finley Square in the City of Hampton. Id. at 693, 701 S.E.2d at 804. Cordon told the detective that his uncle, who was not present at that time, owned the house. Id. at 693, 701 S.E.2d at 805. Cordon said that he had been living in the Finley Square house while his uncle had been away and that one of its bedrooms was his, but Cordon also indicated in a handwritten statement regarding the burglary that an address in the City of Newport News was his residence. Id. at 693, 696, 701 S.E.2d at 805, 806. Two days later, the police executed a search warrant at the Finley *511 Square house. Cordon’s uncle was present, but Cordon was not. Id. at 693, 701 S.E.2d at 804. The police found a cooler containing cocaine in the bedroom that Cordon had identified as his own two days before during his interview with the detective.[10] Id.
Reversing Cordon’s conviction for possession of the cocaine found in the cooler, the Supreme Court noted:
Cordon was not in the house or the bedroom when the cooler containing the cocaine was discovered. There was no other physical evidence linking Cordon to the cooler or the contraband. The record showed that two days had passed between the time Cordon was known to be at the Finley Square house and the seizure of the cooler containing cocaine. While he referred to the bedroom as “his” and stated that he was staying there while his uncle was away at the time of the September burglary, Cordon listed his address as a location in Newport News. There was no evidence of ownership of the cooler, a very portable item, and no evidence placed Cordon at the house at any time between the day he received Baer’s business card and the day the search warrant was executed.
Id. at 696, 701 S.E.2d at 806 (emphasis added).
Thus, as the Supreme Court emphasized, two days passed between when Cordon was known to occupy this bedroom of his uncle’s house and when the cocaine actually was discovered in the cooler in the bedroom. Id. This gap in the evidence against Cordon was consistent with his hypothesis of innocence that someone other than he had placed the cooler of cocaine in the bedroom of his uncle’s house without Cordon’s knowledge. The evidence here contrasts sharply with the evidence in Cordon. Appellant was present in the vehicle *512 while the vehicle strongly smelled of marijuana and while its glove compartment held marijuana; appellant was the sole occupant of the vehicle at that time; and appellant had exclusive possession of the key that was capable of opening the glove compartment containing the baggies of cocaine— which were immediately observable upon opening the glove compartment. All of these circumstances, which simply did not exist in Cordon, render the Supreme Court’s holding in Cordon inapplicable to the facts of this case.
Similarly, the facts in Burchette v. Commonwealth, 15 Va. App. 432, 438, 425 S.E.2d 81, 86 (1992), upon which appellant relies, are distinguishable from the facts presented here. In Burchette, marijuana was found in one of two vehicles owned by Burchette. Burchette had personal items in this vehicle and had been observed near the vehicle, although not inside it, shortly before the marijuana was discovered. Id. at 435, 425 S.E.2d at 83-84. After reviewing this evidence, this Court reversed Burchette’s conviction for possession of marijuana with intent to distribute, holding in pertinent part:
The Commonwealth presented no evidence from which one reasonably could infer that Burchette occupied the vehicle or had exercised dominion over it while the marijuana was present in it. The evidence failed to show either when Burchette may have used or occupied the vehicle or when or for how long the drugs or paraphernalia had been in it. The evidence failed to show that Burchette was the exclusive or primary operator of the vehicle, or that he possessed a set of keys to the vehicle, or when or by whom the vehicle had been most recently operated or occupied. The circumstances were not such that one reasonably could infer, to the exclusion of other reasonable hypotheses, that Burchette, as the owner of the vehicle, knew of the presence, nature and character of the contraband that was found in it.
Id. at 435-36, 425 S.E.2d at 84 (emphasis added).
Unlike in Burchette, the Commonwealth here presented evidence establishing that appellant was in sole possession of the vehicle and was in possession of the key to the vehicle.
*513 The evidence also proved that appellant possessed the key to the glove compartment[11] while the marijuana was in that glove compartment and while the vehicle smelled strongly of marijuana. The speculation required in Burchette was not required here, as these circumstances considered missing in Burchette are found here. Collectively, these circumstances support the factfinder’s conclusion that appellant knew the nature and character of the leafy substance found in the glove compartment. However, additional circumstances in this record provide still further support for the court’s finding of guilt.
c. Appellant’s Apparent Reluctance to Access the Glove Compartment
The officers’ testimony reflects that appellant did not attempt to retrieve the vehicle’s registration from the glove compartment — where, of course, the officers eventually found the marijuana — despite the glove compartment’s obvious utility as “a customary place” to find a vehicle’s registration. South Dakota v. Opperman, 428 U.S. 864, 372, 96 S.Ct. 3092, 3098, 49 L.Ed.2d 1000 (1976) (noting that the glove compartment is “a customary place for documents of ownership and registration, as well as a place for the temporary storage of valuables” (citation omitted)). Indeed, when asked to produce *514 a vehicle’s registration, suspects routinely access a vehicle’s glove compartment, see, e.g. Hill v. Commonwealth, 52 Va.App. 313, 317, 663 S.E.2d 133, 135 (2008); Commonwealth v. Thomas, 23 Va.App. 598, 603, 478 S.E.2d 715, 717 (1996); United States v. Wheeler, 525 F.3d 1254, 1255 (D.C.Cir.2008); Coombs v. Maine, 202 F.3d 14, 15 (1st Cir.2000); United States v. Schiavo, 29 F.3d 6, 8 (1st Cir.1994), even in instances, like here, where the vehicle is not actually owned by the suspect, see Williams, 42 Va.App. at 728, 594 S.E.2d at 308; United States v. Reese, 561 F.2d 894, 897 (1st Cir.1975); Scott v. United States, 369 F.2d 183, 184 (4th Cir.1966).
Here, however, despite being asked by the officers to produce both the registration and his driver’s license, appellant readily provided the officers with only his driver’s license, which was suspended. He did not even attempt to retrieve the vehicle’s registration from the glove compartment.[12] This evidence suggests that appellant was reluctant to access, in the officers’ presence, the glove compartment where the drugs were located. Cf. McMillan, 277 Va. at 20, 671 S.E.2d at 400 (finding the fact that the defendant refused to open the glove compartment in which the drugs were subsequently found was a relevant, probative factor in finding him guilty of possession of cocaine).
Based on this apparent reluctance to open the glove compartment, where the vehicle’s registration would customarily be located, Opperman, 428 U.S. at 372, 96 S.Ct. at 3098, a rational factfinder could infer that appellant knew, if he opened the glove compartment, the officers would immediately *515 observe the illegal substance.[13] Again, considered in isolation this fact perhaps would not provide sufficient evidence on appeal to support the factfinder’s determination that appellant was aware of the character and nature of the substance in the glove compartment. However, considered together with all the evidence presented at trial, this fact adds to the mounting collection of circumstances that support the trial court’s finding of guilt.
d. Appellant’s Self-Serving Testimony
The trial court obviously rejected appellant’s testimony that the marijuana did not belong to him. This rejected claim of innocence, when viewed in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, “ ‘must be interpreted ... as [a] mere fabrication[ ] to conceal his guilt.’ ” Staton v. Commonwealth, 36 Va.App. 282, 289, 549 S.E.2d 627, 630 (2001) (quoting Rollston v. Commonwealth, 11 Va.App. 535, 547, 399 S.E.2d 823, 830 (1991)); see Barnes v. Commonwealth, 47 Va.App. 105, 110 n. 1, 622 S.E.2d 278, 280 n. 1 (2005) (stating that the rational factfinder standard of review on appeal “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, *516 to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts” (citation omitted)). The trial court also clearly rejected appellant’s equivocal and ultimately self-serving testimony that he would not recognize the smell of marijuana:
Q: You’re familiar with the smell of marijuana?
A: Maybe.
Q: ‘Tes” or “no”? What’s maybe mean?
A: That sometimes, I mean—
Q: Sometimes when you smell marijuana, you know it’s marijuana?
A: No, not really. Usually you can smell like — no, not really. I’m not even going to claim that. Not really.
This Court, following the precedent of the United States Supreme Court, has recognized a “general principle of evidence law that the factfinder is entitled to consider a party’s dishonesty about a material fact as ‘affirmative evidence of guilt.’ ” Haskins, 44 Va.App. at 11 n. 3, 602 S.E.2d at 407 n. 3 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000)). Here, given the strong odor of marijuana emanating from the vehicle and the circumstantial nature of this case, appellant’s ability to recognize the smell of marijuana certainly concerned a relevant and material fact. The trial court, therefore, was permitted to assign appropriate weight to appellant’s equivocal testimony that perhaps he could, and then that he could not, recognize the smell of marijuana.[14] Again, this evidence is not an isolated factor in this ease, but instead is further support for the trial court’s determination that, based on the totality of *517 the circumstances, appellant was aware of the presence of the marijuana in the glove compartment.
e. Abandonment of Valuable Contraband
Although appellant asserts that the evidence failed to exclude the possibility that the marijuana baggies belonged to someone else and that he was simply unaware of the presence of drugs in the glove compartment, the Commonwealth “is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the contraband where the contraband is discovered.” Kromer v. Commonwealth, 45 Va.App. 812, 819, 613 S.E.2d 871, 875 (2005) (citation and brackets omitted). A factfinder is permitted to infer that “drugs are a commodity of significant value, unlikely to be abandoned or carelessly left in an area.” Ward v. Commonwealth, 47 Va.App. 733, 753 n. 4, 627 S.E.2d 520, 530 n. 4 (2006) (citing Powell v. Commonwealth, 27 Va.App. 173, 178, 497 S.E.2d 899, 901 (1998)).
Here, it is uncontested that the key to the vehicle’s ignition also unlocked the glove compartment. The glove compartment’s lock provided little security — given several people were known to use the vehicle. Thus, the person who put the marijuana in the glove compartment did so knowing that anyone who drove the vehicle would have the ability to open the locked glove compartment — for any reason — and would then see the marijuana, which was readily observable the moment the glove compartment was opened since it was then in plain view as it was not hidden by anything in the glove compartment. Any other driver of the vehicle, therefore, could easily take that marijuana from the glove compartment.[15]
Under these circumstances, the trial court was entitled to find it highly unlikely that someone else simply left the *518 marijuana — which had a street value of over $200 — in the glove compartment of the car. This inference is another factor supporting the trial court’s finding that appellant possessed the marijuana with knowledge of its nature and character. See Bowling v. Commonwealth, 51 Va.App. 102, 107, 654 S.E.2d 354, 356 (2007) (“[W]hen we consider the sufficiency of the evidence ... we review the totality of the evidence to determine whether it was sufficient to prove an offense.”).
2. Rejection of Hypothesis of Innocence
Despite the accumulation of these various facts and circumstances, appellant contends that the trial evidence did not foreclose the possibility that someone other than appellant used marijuana in the car, creating the odor of marijuana that the officers smelled, prior to appellant’s taking possession of it, or that someone other than appellant used marijuana before getting into the vehicle with appellant. Both of these possibilities, he asserts, would explain the strong odor of marijuana that was readily discernible by the officers without implicating appellant’s guilty knowledge of the marijuana recovered from the glove compartment.
“ ‘The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.’ ” Kelly, 41 Va.App. at 258, 584 S.E.2d at 447-48 (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785). Furthermore,
“[wjhether the hypothesis of innocence is reasonable is itself a ‘question of fact,’ Emerson v. Commonwealth, 43 Va.App. 263, 277, 597 S.E.2d 242, 249 (2004) (citation omitted), subject to deferential appellate review, Kelly, 41 Va.App. at 259, 584 S.E.2d at 448.” Haskins, 44 Va.App. at 9, 602 S.E.2d at 406. “Merely because defendant’s theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded.” Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). “By finding the defendant guilty, therefore, the factfinder ‘has *519 found by a process of elimination that the evidence does not contain a reasonable theory of innocence.’” Haskins, 44 Va.App. at 9, 602 S.E.2d at 406 (quoting United States v. Kemble, 197 F.2d 316, 320 (3d Cir.1952)).
Clanton v. Commonwealth, 53 Va.App. 561, 572-73, 673 S.E.2d 904, 910 (2009) (en banc); see Lyons v. City of Petersburg, 221 Va. 10, 13, 266 S.E.2d 880, 881 (1980) (“Circumstantial evidence is sufficient to convict if it excludes every reasonable hypothesis of innocence. This occurs when the trier of facts has an abiding conviction of the guilt of the accused.” (emphasis added)).
The rejection of a hypothesis of innocence “is binding on appeal unless plainly wrong,” Archer v. Commonwealth, 26 Va.App. 1, 12-13, 492 S.E.2d 826, 832 (1997) — even if there is “some evidence to support” the hypothesis of innocence.[16] Hudson, 265 Va. at 513, 578 S.E.2d at 785. For example, in Clanton, an en banc opinion of this Court, “[t]he evidence permitted conflicting inferences, including the inference that the assailants took the infant from her father solely at his request and not to facilitate the robbery.” 53 Va.App. at 573, 673 S.E.2d at 910. However, this Court affirmed the rejection of this hypothesis of innocence because the trial court did not arbitrarily adopt an interpretation of the evidence that incriminated Clanton. Id. This Court’s opinion in Clanton *520 reflects that, on appellate review for the sufficiency of the evidence, the factfinder’s rejection of a hypothesis of innocence “ ‘cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion.’ ” Id. (quoting Haskins, 44 Va.App. at 9, 602 S.E.2d at 406).
Here, the trial court, as factfinder, did not arbitrarily reject appellant’s hypothesis of innocence. Rather, as discussed above, numerous circumstances allowed the trial court to infer appellant’s knowledge of the marijuana found in the glove compartment — and this Court must view and analyze these circumstances in their totality, not separately. Hudson, 265 Va. at 514, 578 S.E.2d at 786. No evidence in the record required the trial court to accept appellant’s speculative hypotheses regarding how the vehicle came to have such a strong odor of marijuana without any participation by him at all in the creation of that odor.
The evidence placed appellant in sole possession of the vehicle for a period of approximately two hours prior to the traffic stop, and the vehicle emanated the strong odor of marijuana when the traffic stop occurred. From the moment he took sole possession of the vehicle until the moment he was placed in the police cruiser, appellant had exclusive access to the contents of the glove compartment, including the marijuana, which was immediately observable upon opening the glove compartment. Although the officers requested appellant’s driver’s license and the vehicle’s registration, appellant did not attempt to retrieve the registration from the glove compartment, where a vehicle’s registration is customarily kept (and, of course, where the marijuana had been placed), even though appellant readily provided the officers with his driver’s license, which was suspended. Viewed in its totality, this evidence was consistent with appellant’s guilty knowledge of the marijuana in the glove compartment. See Moore v. Commonwealth, 254 Va. 184, 189, 491 S.E.2d 739, 742 (1997).
In addition, testifying in his own defense, appellant denied that the marijuana worth over $200 was his, and — after some equivocation — claimed that he could not even recognize the *521 smell of marijuana. The trial court obviously rejected this self-serving testimony and, therefore, could consider it as additional evidence pointing to appellant’s guilty knowledge of the valuable marijuana inside the vehicle. See Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948) (explaining that, when a defendant “proceeds to introduce evidence in his own behalf,” the prosecution’s case “may be strengthened by defendant’s evidence”); see also Marable v. Commonwealth, 27 Va.App. 505, 509-10, 500 S.E.2d 233, 235 (1998).
3. Trial Court’s Finding of Possession Was Not Error
Consequently, based on the combined effect of all of the facts and circumstances presented at trial, which were far more significant than appellant’s mere occupancy of the vehicle in which drugs were found and proximity to those drugs, contra Coward, 48 Va.App. at 658, 633 S.E.2d at 754, we cannot say that the trial judge here was not a rational factfinder — just as we cannot say that no rational factfinder in this Commonwealth could have found beyond a reasonable doubt that appellant constructively possessed this marijuana with knowledge of its nature and character.
B. Intent to Distribute
Without conceding that he possessed the marijuana, appellant also argues that the evidence was insufficient to prove that he intended to distribute the marijuana recovered from the glove compartment. He contends that the evidence did not foreclose the possibility that the marijuana was packaged for personal use. We disagree with appellant’s argument.
“ ‘Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence.’ ” Welshman v. Commonwealth, 28 VaApp. 20, 37, 502 S.E.2d 122, 130 (1998) (en banc) (quoting Servis v. Commonwealth, 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988)). Factors that a trial court may consider as indicators that a defendant intended to distribute the illegal drugs in his pos *522 session include the “possession of a quantity [of drugs] greater than that ordinarily possessed for one’s personal use,” Iglesias v. Commonwealth, 7 Va.App. 93, 110, 372 S.E.2d 170, 180 (1988) (en banc), “the method of packaging of the controlled substance,” and “the absence of any paraphernalia suggestive of personal use,” Welshman, 28 Va.App. at 37, 502 S.E.2d at 130. “Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs regarding whether it is for personal use.” Askew v. Commonwealth, 40 Va.App. 104, 109, 578 S.E.2d 58, 61 (2003).
Appellant contends that Dukes v. Commonwealth, 227 Va. 119, 313 S.E.2d 382 (1984), and Rice v. Commonwealth, 16 Va.App. 370, 429 S.E.2d 879 (1993), where convictions for possession of marijuana with intent to distribute were reversed, compel reversal here. However, those cases are readily distinguishable from the facts of this case.
The Supreme Court held in Dukes that “[t]he mode of packaging [the marijuana] and the way the packages were hidden are as consistent with possession for personal use as they are with intent to distribute.” 227 Va. at 123, 313 S.E.2d at 384 (emphasis added). Here, the marijuana recovered from the glove compartment was packaged in twenty-three individual baggie corners. Officer Natal, the Commonwealth’s expert witness on the packaging and distribution of narcotics, testified that he had never before seen an instance where someone possessed twenty-three individual baggie corners of marijuana for personal use. Thus, the evidence in this case proved that the packaging was much more consistent with distribution than with personal use — evidence that was not presented to the trial court in Dukes.
Furthermore, in Rice, the defendant’s “possession of 0.74 ounces of marijuana and almost $5,000 in cash, without more,” was found insufficient by itself to support his conviction for possession with intent to distribute “when the evidence also showed that the marijuana was found in one baggie and that appellant himself tested positive for marijuana use.” 16 Va. *523 App. at 372, 429 S.E.2d at 880 (emphasis added). Unlike in Rice, in this case an expert provided unrebutted testimony that the marijuana was packaged for distribution. See Scott v. Commonwealth, 55 Va.App. 166, 174, 684 S.E.2d 833, 837 (2009) (“[T]he drugs were packaged individually in baggie corners, making them easier and more profitable to sell.” (citation omitted)).
Therefore, neither Dukes nor Rice is controlling in this case. The trial court here was not plainly wrong in finding that the packaging of the marijuana in twenty-three individual baggie corners evinced appellant’s intent to distribute the marijuana.
III. Conclusion
Appellant at the time of the traffic stop was in sole possession of the vehicle and possessed the key to the glove compartment, which contained marijuana valued at over $200, at the same time that the vehicle smelled strongly of the distinctive odor of marijuana, which the trial court found had been recently burnt. Appellant made no attempt to retrieve the vehicle’s registration from the glove compartment when asked to provide the registration — even though he readily provided his driver’s license, which was suspended — and then testified at trial that the marijuana was not his and that he was, perhaps, not familiar with the smell of marijuana, which the trial court, as factfinder, did not believe. An expert testified that the packaging of the marijuana was inconsistent with personal use.
Based on the totality of the circumstances found in this record, there was sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that appellant knowingly possessed the marijuana and to find that appellant intended to distribute the marijuana. Accordingly, we affirm appellant’s conviction for possession of marijuana with intent to distribute.

Affirmed.

. Appellant was also convicted of driving on a suspended license, third or subsequent offense, in violation of Code § 46.2-301. Appellant challenged that conviction in his petition for appeal, but an appeal was not granted on that question presented.

. Therefore, the panel majority opinion did not reach the question of whether appellant possessed this marijuana with intent to distribute.

. At trial, appellant moved to suppress the fruits of the search resulting from this traffic stop. The trial court denied the motion to suppress. Appellant did not appeal this ruling, and, therefore, he has not argued on appeal that anything about the traffic stop was improper.

. Appellant called Killabrew as a witness during the suppression hearing, which was held immediately before the bench trial. The court described this testimony as "just for the suppression” issue. However, the trial court, the prosecutor, and appellant's own defense counsel all referenced Killabrew's testimony when addressing the evidence rele *501 vant to appellant's guilt on the possession with intent to distribute charge. Therefore, as appellant’s counsel acknowledged during oral argument, since the trial court was asked to consider this evidence when determining appellant's guilt, we are certainly not constrained from considering Killabrew’s testimony in determining the sufficiency of the evidence on appeal.

. The key to the vehicle, which appellant used to engage the ignition, was also capable of unlocking the glove compartment where the marijuana was found. " ‘The law is well established that possession of the means to exercise dominion [and] control over an item gives the possessor dominion [and] control over the item [itself].' ” Wright v. Commonwealth, 53 Va.App. 266, 274, 670 S.E.2d 772, 776 (2009) (quoting Bell v. Commonwealth, 21 Va.App. 693, 698-99, 467 S.E.2d 289, 291-92 (1996)).

. This Court's opinion in Josephs was overruled in part by the Supreme Court in Young, 275 Va. at 592, 659 S.E.2d at 311. In Josephs, the defendant, whose luggage was placed in the trunk of a vehicle next to 130 pounds of marijuana packaged in closed garbage bags, said she "didn't know about drugs. 1st time I’ve driven with that stuff.” Josephs, 10 Va.App. at 100, 390 S.E.2d at 498. Discussing the evidence that supported Josephs' conviction for possession of marijuana with intent to distribute, the dissent here states, "Most significantly, in the Josephs case, the defendant by her own statement conceded that she was aware of the substance as she acknowledged that it was the first time she had 'driven with that stuff.’ ” Contrary to the dissent’s claim, however, the use of Josephs' statement in this manner in Josephs was actually a significant factor in the Supreme Court’s decision in Young to partially overrule this Court's opinion in Josephs — to the extent that Josephs had held that bare possession of a controlled drug (which Josephs had conceded in her statement to the arresting officer) gave rise to an inference of guilty knowledge of the drug. Young, 275 Va. at 592, 659 S.E.2d at 311. Instead, the Supreme Court’s brief discussion *508 of Josephs emphasized the "ample circumstantial evidence” that established Josephs’ guilty knowledge of the marijuana, focusing approvingly on the "the odoriferous contents of the trunk” in that case — which, unlike the odorless contents of the pill bottle in Young, gave Josephs an indication of the nature and character of the marijuana within the vehicle there. Id. at 592, 659 S.E.2d at 310-11.

. We note that the distinction between the odor of fresh marijuana and the odor of burnt marijuana was first introduced when the case came to this Court on appeal. During appellant’s motion to strike the Commonwealth’s evidence at trial, while arguing that the totality of the evidence at that point of the trial did not support appellant's guilt, appellant’s trial counsel seemed to acknowledge that the strong odor of marijuana that was detected by the officers was a factor for the trial court to consider in assessing the sufficiency of the evidence. However, appellant’s counsel never argued in the trial court that any distinction between the odor of fresh marijuana and the odor of burnt marijuana would even be a relevant factor for the trial court to consider in reaching its verdict.

. It is axiomatic that burnt marijuana must originate as unburnt marijuana. Therefore, the fact that the Ziploc bags of unburnt marijuana did not contain the same number of baggie corners (ten in one and thirteen in the other) supports the trial court's inference that someone had recently smoked this marijuana inside the vehicle. In addition, no other source for the marijuana odor was found in the vehicle.

. We emphasize that the presence of the strong odor of marijuana emanating from the vehicle is not the sole or dispositive factor establishing appellant’s guilty knowledge of the marijuana in the glove compartment beyond a reasonable doubt. It is one of " 'many concurrent and related circumstances,’ ” which may lead a rational factfinder " 'irresistibly to a conclusion' ” of guilt in this case. Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (quoting Stamper, 220 Va. at 273, 257 S.E.2d at 818).

. The police found in that bedroom "some checks and some papers and stuff” bearing Cordon's name. Cordon, 280 Va. at 693, 701 S.E.2d at 804. The detective's business card was found in the same nightstand where ammunition and drug paraphernalia were also found. Id. at 693, 701 S.E.2d at 805. During a subsequent interview with the police detective one week later, Cordon denied living at the Finley Square house. Id. at 694, 701 S.E.2d at 805.

. Appellant’s possession of the key that was capable of accessing the glove compartment obviously was highly probative in determining whether he had dominion and control over the marijuana retrieved from the glove compartment, but this evidence was also relevant in determining whether appellant was aware of the marijuana in the glove compartment. See Burchette, 15 Va.App. at 435-36, 425 S.E.2d at 84 (considering the failure to prove Burchette’s possession of the vehicle’s keys as relevant in determining both dominion and control and guilty knowledge of the drugs found inside the vehicle). Whoever placed the marijuana into the glove compartment was necessarily aware that anyone with a key to the vehicle would have dominion and control over the glove compartment and, as a result, over the marijuana — which could have been seen immediately upon opening the glove compartment. Therefore, the factfinder could reasonably infer that the owner of the marijuana would keep these illegal drugs in the glove compartment only when he or she possessed the means to operate the vehicle— leading to the conclusion that the holder of the key in this case, appellant, was the owner of the marijuana or had guilty knowledge of it.

. During oral argument before the full Court, appellant’s counsel contended that appellant did not have sufficient opportunity to access the glove compartment to retrieve the vehicle’s registration, basing his argument on testimony from one of the officers. However, upon review of the entire record, the evidence clearly indicates that appellant was not removed from the car immediately upon handing his license to the officers, but instead he was removed after the officers confirmed through the dispatch that his license was suspended. Therefore, appellant had sufficient opportunity to comply with the officers' request for the vehicle’s registration.

. Opperman should not be interpreted, of course, to create a legal duty for motorists to access the vehicle’s glove compartment when officers request vehicle registration, which is not the issue before this Court in this challenge to the sufficiency of the evidence supporting appellant's conviction. As an appellate court, this Court must view the evidence in this case in the light most favorable to the prevailing party below and give that party "the benefit of any reasonable inferences.” Glenn v. Commonwealth, 49 Va.App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). That appellant did not access the glove compartment when the officers requested the vehicle’s registration presented a circumstance consistent with appellant’s guilty knowledge of the marijuana located within the glove compartment — or so a rational factfinder reasonably could have inferred, when the totality of the evidence in this particular case is viewed in the light most favorable to the Commonwealth (as the prevailing party below). Therefore, our analysis here is limited to the inferences that a rational factfinder could have made in this case when the facts are viewed in the light most favorable to the Commonwealth— and should not be read, of course, to suggest that a factfinder (in this or any other case) is required to infer any specific finding or conclusion.

. Given that the trial court is granted with "wide discretion” to determine the credibility of this live testimony by appellant (see Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955)), the trial court here clearly found that appellant’s testimony was not credible, even if the trial court did not explicitly make that finding when making its ruling on appellant’s guilt. See Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008) (holding that an appellate court's examination of the record is not limited to the evidence mentioned by the trial court when it makes its ruling).

. Killabrew regularly permitted appellant to use the vehicle, and appellant admitted that he used the car when he needed to run errands. This regular use of the vehicle is very different than a situation where a person leases a rental car or where a person unwittingly drives a friend's car on an irregular or one-time basis.

. It is important to note that nothing in the record supports appellant’s theories of innocence. Killabrew's testimony did not reveal whether she had any knowledge of the marijuana in the glove compartment. As the trial court noted, no other driver of this vehicle besides Killabrew testified at appellant’s trial (other than appellant). These circumstances are very different than the circumstances that were before the Supreme Court in Cordon. There, Cordon had indicated in a handwritten statement to the police that an entirely different address in Newport News was his residence, Cordon, 280 Va. at 693, 696, 701 S.E.2d at 805, 806 — and Cordon had given this written statement to the police days before the cooler with the cocaine was found in the bedroom of his uncle’s house, id. at 693, 701 S.E.2d at 805. This written statement pointing to Cordon's maintenance of a separate residence, along with other circumstances that are distinguishable from this case, supported Cordon's hypothesis of innocence that he was simply unaware that someone else had placed the cooler containing cocaine in the bedroom he had used in his uncle’s house.