COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and White
Argued at Norfolk, Virginia


SAMUEL BOYD

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1367-21-1                      JUDGE GLEN A. HUFF
                                                    NOVEMBER 15, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Charles E. Haden for appellant.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee.  Appellee submitting on
brief.


Samuel Boyd ("appellant") was convicted in the Newport News Circuit Court (the "trial

court") of possession of heroin with the intent to distribute.  Appellant argues that the trial court

erred by denying his motion to strike because the evidence did not establish, beyond a reasonable

doubt, his intent to distribute heroin.  Because the evidence was sufficient to establish appellant's

intent, this Court affirms.

BACKGROUND

This Court views the facts "in the light most favorable to the Commonwealth," disregarding

appellant's conflicting evidence and granting the Commonwealth all reasonable inferences from its

evidence.  *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (first quoting *Scott v.*

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Commonwealth*, 292 Va. 380, 381 (2016); and then citing *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

On June 15, 2019, two Newport News Police officers went to a residence in response to a report of a drug overdose. When they arrived, they encountered eight to ten people and found appellant in a hallway on the second floor of the house. Appellant had trouble breathing, and the officers believed he was suffering the effects of a drug overdose, so they administered Narcan, a drug-overdose reversal agent. One officer accompanied appellant to the hospital, where appellant received treatment for a suspected opioid overdose. At the hospital, the officer found $6,000 in cash on appellant's person.

After obtaining a search warrant, police officers searched the residence. In a second-floor bedroom—which the officers learned belonged to appellant—they found medicine bottles bearing appellant's name on a nightstand, his identification card, and envelopes addressed to him in a dresser and on a desk. The police also found other prescription pill bottles bearing the name "Quaneisha Gee" and mail addressed to the same name. Under a file folder on the desk, the police found three plastic bags, along with straws and scales, which had heroin residue on them. One plastic bag contained 10.91 grams of a powder mixture of heroin, cocaine, and fentanyl. Another bag contained almost three grams of cocaine. The third bag contained a "chunky brown material" that was not a controlled substance. Officers found other items in the room, including two phones, a razor blade, mylar bags, and a heat gun on the desk near the bags.

During an interview, Detective Jessie told appellant that they had found him overdosed at the house. Appellant, surprised, asked how he could have overdosed when he only sells drugs and does not use them.

At trial, Detective Jessie testified that mylar bags are a common packaging for drugs; the bags are then sealed with a heat gun to conceal the odor. Based on his training and experience,

Detective Jessie opined that the desk was a "cooking station" or "cutting station" for mixing drugs with inert substances to increase the volume of product for sale. He believed the brown substance in the third bag could serve as a "cutting agent." He also testified the other bags contained "a very high amount" of drugs, so it was "very unlikely that someone would use that just for personal use."

Appellant testified that the drugs in the bedroom were not his. He explained that Gee is his ex-wife, they have a child together, and she shared the bedroom with him. He claimed that he did not know that the drugs were in the room or that drug activity was occurring in his house. He admitted that he used one of the scales but stated he used it to weigh lithium batteries which he bought and sold online. He stated that the large amount of cash he possessed was from a settlement he received following an automobile accident; he had withdrawn the money from his bank to make vacation reservations. Finally, Boyd stated that he does not use drugs and that he does not know how to use or sell heroin. He admitted, however, that he did have previous felony drug convictions.

The trial court convicted appellant of possession of heroin with intent to distribute. This appeal followed.

ANALYSIS

Appellant argues that the evidence did not establish his intent to distribute heroin. Although he acknowledges his statement to Detective Jessie that he was a dealer rather than a user, he claims the facts—particularly his overdose—show he was not a dealer but only a user. Appellant does not contest the trial court's conclusion that he possessed the discovered drugs.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Circumstantial evidence may prove a person's intent to distribute drugs. *Scott v. Commonwealth*, 55 Va. App. 166, 172 (2009) (*en banc*). Circumstantial evidence can include many "[f]actors that a trial court may consider as indicators that a defendant intended to distribute the illegal drugs in his possession[,] includ[ing] the 'possession of a quantity [of drugs] greater than that ordinarily possessed for one's personal use.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 521-22 (2011) (*en banc*) (fourth alteration in original) (quoting *Iglesias v. Commonwealth*, 7 Va. App. 93, 110 (1988) (*en banc*)). Other factors include "the method of packaging of the controlled substance" and "the absence of any paraphernalia suggestive of personal use." *Id.* at 522 (quoting *Welshman v. Commonwealth*, 28 Va. App. 20, 37 (1998) (*en banc*)). Further, "[e]xpert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs regarding whether it is for personal use." *Askew v. Commonwealth*, 40 Va. App. 104, 109 (2003) (quoting *Shackleford v. Commonwealth*, 32 Va. App. 307, 327 (2000)).

"While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin*, 57 Va. App. at 505 (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

Appellant contends that his overdose shows he was a user rather than a dealer. His argument mistakenly assumes a person cannot be both. Here, the recovered evidence allowed for a reasonable inference that appellant intended to distribute the recovered drugs.

The officers found the drugs in a room belonging to appellant that contained some of his personal documents and prescription bottles. *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (noting a "person's ownership or occupancy of premises on which the subject item is found" is a "probative factor[] to be considered"). The recovered drugs included a powder mixture of cocaine, heroin, and fentanyl weighing almost eleven grams, an amount inconsistent with personal use, according to Detective Jessie. The officers also discovered a desk, mylar bags, and a heat gun. As Detective Jessie testified, those distributing drugs commonly use those items for packaging their product. The possible "cutting agent" the officers found supported that conclusion.

Other evidence also suggested appellant was engaged in drug distribution, such as the two phones found in the room, the drugs, and the substantial amount of cash police found on his person. Finally, although it conflicted with his later denial, appellant's own incriminating statement—that he only sold, rather than used, drugs—also indicated an intent to sell the discovered drugs. *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (explaining a factfinder may "resolv[e] conflicts in a single witness' testimony" by choosing what "it deems credible and rejecting [what] it deems incredible"). Considering all this evidence, a factfinder could conclude, beyond a reasonable doubt, that appellant intended to distribute heroin.

CONCLUSION

As the evidence was sufficient to establish the requisite intent, this Court affirms appellant's conviction.

*Affirmed.*