**Alexandria**

EDWIN LEE JURY, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0160-89-4

Decided August 28, 1990

COUNSEL

R. Dean Kidwell, Public Defender (Office of Public Defender, Fairfax County, James B. Slaughter, Assistant Public Defender, on brief), for appellant.

M. Katharine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—In this appeal, we hold that the trial court erred in refusing to admit into evidence the testimony of a defense witness who had remained in the courtroom in violation of an order excluding witnesses.

Edwin Lee Jury, Jr. was convicted in a jury trial of second degree murder of Barbara Guice and of malicious wounding of Fred Rotramel. At the beginning of the trial, upon motion by defense counsel under Code § 19.2-265.1, the court ordered "anyone who may testify" to wait outside and not to discuss his testimony. At that time the witnesses were not called and identified. The court gave no further admonition to insure that the witnesses were aware of the exclusion order and understood it.

Testifying in his own behalf, Jury said that on the night in question he and Miss Guice, whom he had known for many years and with whom he enjoyed an intimate relationship, moved some of her property to a new room that she had just rented. While there, they shared a six-pack of beer, he took two of her valiums, and they engaged in sexual intercourse. Between 11:00 p.m. and 11:30 p.m., they went to the apartment complex in which both Jury's father, Edwin L. Jury, Sr. and Fred Rotramel lived. Jury left the car to go see his father. He testified that Miss Guice told him that she would go to Rotramel's apartment to get some PCP. He returned to the car and, after a few minutes, Miss Guice came out of the apartment building with Rotramel. She told Jury that she was going to get some cigarette rolling papers and would only be a minute. She then got into Rotramel's car with him. Jury further testified that after several minutes he heard Miss Guice scream. He grabbed a knife, bolted from his car, and opened the passenger door of Rotramel's car. He described what he saw:

When I opened up the door Fred. . . I don't know his last. . . just Fred. . . was leaned back in the seat with his back against his driver's side and his pants were down to the. . . below his knees. And he had his hand. . . left hand I believe it was pulling at Barbara's hair near his crotch and. . . which looked like he was trying to make her give him oral sex.

Jury said that he thought Rotramel was "raping her or trying to force her into giving him oral sex," and that he "went into a rage." He said that he pulled the knife from his back pocket, opened it, and swung "wide and wild." He said that he was trying to hit Rotramel to make him release Miss Guice. When he realized that he had missed Rotramel and had struck Miss Guice, he, "well, after that I. . . I just really raged out. I really lost it then. I mean I went to Fred and I started stabbing at Fred." Jury testified that he then "panicked" and left the scene.

Rotramel denied any sexual involvement with Miss Guice and denied that he had sold drugs to her or used drugs with her. He testified that she came to his apartment around midnight to talk to him. He said that she was drunk and loud. He was concerned that she might awaken his family, so he suggested that they sit in his car to talk. He was seated on the driver's side with Miss Guice to his right. He said that after a few minutes the passenger door to his car opened and Jury started stabbing. In defense, Rotramel threw up his hands and started kicking his feet. Leaving his car by the driver's door, he ran around to the right side. He attempted to remove Miss Guice, who fell face down on the pavement. There was no movement. He "just knew that she was dead." Rotramel testified that he returned to his apartment to bandage his thumb and to clean himself up. He then got in his car and drove "around the corner" to "collect his thoughts." After a "couple of hours," he returned to his apartment where he was confronted by the police.

Rotramel initially told the police that he and Miss Guice had been attacked by an unknown assailant. He maintained this admittedly false account until he was arrested for a probation violation. Then, in exchange for a promise by an investigating officer to try to have him released from jail pending his probation violation hearing, Rotramel agreed to testify against Jury. On cross-exami-

nation, Rotramel acknowledged that he lived in the same apartment complex as Edwin Jury, Sr., and that he had discussed Jury, Jr., with Jury, Sr. He denied, however, that he had ever said that he was going to bury Edwin Jury, Jr.

When the defense called Edwin Jury, Sr. as a witness, the court learned that, in violation of the order excluding witnesses, Jury, Sr. had remained in the courtroom throughout the testimony. There was no showing that he had done so other than through misunderstanding. Defense counsel informed the court that he had not been aware of Jury, Sr.'s presence in the courtroom and that he did not know whether Mr. Jury had been present when the court announced the exclusion order. This proffer was not contradicted. Defense counsel further proffered that Jury, Sr. would testify that Rotramel had told him that he was going to bury Edwin Jury, Jr. Counsel stated that he sought to introduce this evidence not only to impeach Rotramel, but also to demonstrate his bias and prejudice in the case.

The trial court refused to permit Edwin Jury, Sr. to testify. We hold that this ruling was an abuse of discretion and was error.

A trial court has discretion to decide whether a witness who violates an exclusion order should be prevented from testifying. Factors to be considered include whether prejudice will result to the defendant and whether the violation of the rule resulted from intentional impropriety. *Bennett v. Commonwealth*, 236 Va. 448, 465, 374 S.E.2d 303, 314 (1988), *cert. denied*, 490 U.S. 1028 (1989); *Brickhouse v. Commonwealth*, 208 Va. 533, 537-38, 159 S.E.2d 611, 614 (1968). Each of these cases upheld the receipt into evidence of testimony from Commonwealth's witnesses who had violated an exclusion order, upon a finding that the violation was not intentional and did not work prejudice on the defendant.

Other than the defendant, Rotramel was the only surviving eye witness to the matters on trial. Anything that would discredit Rotramel or depreciate the weight of his testimony was vital to the defense. It is unquestioned that the violation of the exclusion order by Edwin Jury, Sr. was unintentional, both on his part and on the part of defense counsel. There was no showing that his presence in the courtroom influenced his testimony.

■ Orders excluding witnesses during the taking of testimony play an important part in our system of justice and should be enforced. However, if their enforcement is to work justice and not injustice, care must be taken by the trial courts and by counsel to insure that those orders are plainly announced and that their effect is made clear to all witnesses.

Finally, the Commonwealth argues that the trial court's ruling, if error, was harmless. This argument is plainly without merit. The excluded testimony addressed the credibility of the only witness against the defendant and the weight to be given to his testimony. For the foregoing reasons, the judgment of the trial court is reversed, the order of conviction is vacated, and this case is remanded to the trial court for further proceedings if the Commonwealth be so advised.

*Reversed and remanded.*

Keenan, J., and Moon, J., concurred.