COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Frank, Kelsey and Alston
Argued at Chesapeake, Virginia

ALEXANDER J. DENNOS, JR.

OPINION BY
v.    Record No. 0635-13-1                   JUDGE D. ARTHUR KELSEY
                                             MARCH 11, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

W. McMillan Powers, Assistant Public Defender (Office
of the Public Defender, on brief), for appellant.

Susan Baumgartner, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

The trial court convicted Alexander J. Dennos, Jr., of two counts of construction fraud, in

violation of Code § 18.2-200.1.  On appeal, Dennos claims that the evidence was insufficient to

find him guilty and that the single-larceny doctrine required the court to merge the charges into a

single count.  Disagreeing with both assertions, we affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and internal quotation marks omitted).

In addition, "an appellate court's 'examination is not limited to the evidence mentioned

by a party in trial argument or by the trial court in its ruling.'"  Perry v. Commonwealth, 280 Va.

572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "'an appellate court must consider all the evidence admitted at trial that is contained in the record.'" Id. (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586); see also Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

The evidence at trial showed that Dennos entered into an oral contract on May 18, 2012, with Marilyn Bradley to "seal" the leaks in her roof. App. at 24-25. His contractual fee was $1,000 for the sealing job. Dennos requested a check for $1,000 from Bradley and then promptly cashed it the same day.

The next day, May 19, 2012, Dennos returned unannounced to Bradley's home — not to begin the job, but to explain that the sealing contract would not fix the leaky roof. Instead, he suggested they enter into a new contract to replace the roof. The fee for replacing the roof, he said, would be $3,700. Dennos requested, and Bradley provided that same day, another $1,800 check which Dennos said he would use (in addition to the earlier $1,000) as an advance.

Dennos produced a written contract, which Bradley signed, for the roof replacement. The one-page, standard form contract was inaptly titled "Pest Control Service Agreement" and identified Dennos as an "Inspector" for A-Atlantic Termite & Pest Control. Id. at 102. Two days later, Dennos cashed the $1,800 check.

Dennos never returned to Bradley's home either to seal or to repair her roof, never ordered any shingles, and never hired any workers. Over many weeks, Bradley made fifteen to twenty phone calls to Dennos. On one occasion, about a month after signing the contract, Dennos dropped off a few "sample" shingles. Id. at 30, 38. On the few occasions in which Bradley was able to get Dennos on the phone, he would give her a date for delivery of the shingles and "a date that the roof would be done" which would come and go without any work

commencing. Id. at 30, 31. Bradley eventually drove to the address on Dennos's written contract and discovered a deserted residence.

Bradley contacted an attorney looking for help. The attorney made approximately thirty-five to forty calls to Dennos. On one occasion, Dennos said he would return the money in full. When he failed to do so, the attorney sent a certified demand letter pursuant to Code § 18.2-200.1, requesting that the advances be returned to Bradley immediately. Dennos came into the attorney's office and signed the demand letter, acknowledging his receipt. He acknowledged his obligation to return the $2,800 he had received from Bradley and made a $100 down payment on the debt. When the attorney upbraided Dennos for "ripping [Bradley] off," Dennos replied, "Yes, I know." Id. at 56.

In the meantime, Bradley's roof continued to leak. She eventually gave up on Dennos and hired a roofing contractor to inspect the roof. The contractor advised her that the roof "didn't need replacing" and that targeted repair work would fix the leaks. Id. at 43; see also Oral Argument Audio at 00:40 to 00:44 (Dennos's counsel conceding that, "it's clear that the evidence was [Bradley] did not need the new roof").

A grand jury indicted Dennos on two counts of construction fraud.[1] The first count alleged that Dennos fraudulently received $1,000 on May 18, 2012, as a full prepayment for the oral contract to seal the roof, and the second count alleged Dennos fraudulently received an advance of $1,800 on May 19, 2012, as a partial prepayment for the written contract to replace the roof. Sitting as factfinder, the trial court convicted Dennos on both counts.

---

[1] The grand jury also indicted Dennos on two counts of obtaining money by false pretenses, in violation of Code § 18.2-178, but at the conclusion of the Commonwealth's evidence, the trial court granted the Commonwealth's motion to dismiss these charges.

II.

On appeal, Dennos contends the evidence failed to support either count of construction fraud and that, in the alternative, whatever fraud which could be inferred would only constitute one unit of prosecution under the single-larceny doctrine.

A.  EVIDENTIARY SUFFICIENCY

We first consider Dennos's challenge to the sufficiency of the evidence, which, if successful, would render his single-larceny argument moot.

(i)  *Appellate Standard of Review*

In Virginia, the standard of appellate review on this issue has been well settled.  We examine a trial court's fact-finding "with the highest degree of appellate deference."  Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).  An appellate court thus does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)); see Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (quoting Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (reaffirming Jackson standard)).[2]

Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Commonwealth, 280 Va. 672,

---

[2] Accord Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011); Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010); Prieto v. Commonwealth, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

676, 701 S.E.2d 61, 63 (2010) (emphasis added) (citing <u>Jackson</u>, 443 U.S. at 319).  Thus, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion."  <u>Cobb v. Commonwealth</u>, 152 Va. 941, 953, 146 S.E. 270, 274 (1929).

"This deferential appellate standard applies not only to the historical facts themselves, but the inferences from those facts as well."  <u>Clanton v. Commonwealth</u>, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Sullivan</u>, 280 Va. at 676, 701 S.E.2d at 63-64.  "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,'" <u>Tizon v. Commonwealth</u>, 60 Va. App. 1, 10, 723 S.E.2d 260, 264 (2012) (internal quotation marks omitted), "unless doing so would push 'into the realm of *non sequitur*,'" <u>id.</u> (quoting <u>Thomas</u>, 48 Va. App. at 608, 633 S.E.2d at 231).

(ii)  *Proof of Construction Fraud*

The construction fraud statute, Code § 18.2-200.1, states in pertinent part, that any person obtaining "an advance" of money "with fraudulent intent" based "upon a promise" to do work on a home or other building "shall be deemed guilty of the larceny of such money" if he "fail[s] or refuse[s] to perform such promise" and "fails to return such advance within fifteen days of a request to do so sent by certified mail."

In construction fraud cases, as in all other fraud cases, fraudulent intent can be inferred from "the conduct and representations of the defendant."  <u>Rader v. Commonwealth</u>, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992) (internal quotation marks omitted).  The intent must exist at the time the contractor procured the advance.  <u>Klink v. Commonwealth</u>, 12 Va. App. 815, 819, 407 S.E.2d 5, 7 (1991).  Circumstances implying fraudulent intent include a contractor's false statements, <u>Mughrabi v. Commonwealth</u>, 38 Va. App. 538, 548, 567 S.E.2d 542, 547 (2002),

subsequent failure to perform the work, <u>Holsapple v. Commonwealth</u>, 266 Va. 593, 587 S.E.2d 561 (2003), failure to use the advanced funds to purchase supplies or to hire needed labor, <u>Mughrabi</u>, 38 Va. App. at 548, 567 S.E.2d at 547, efforts to avoid communicating with the homeowner, <u>McCary v. Commonwealth</u>, 42 Va. App. 119, 128, 590 S.E.2d 110, 115 (2003), and refusal to return the advanced funds, <u>Mughrabi</u>, 38 Va. App. at 548, 567 S.E.2d at 547.[3]

Applying these principles, we find ample evidence from which a rational factfinder could conclude that Dennos committed construction fraud in violation of Code § 18.2-200.1. Having taken $2,800 in two separate advances from Bradley, Dennos bought no materials, hired no laborers, and never climbed on the roof to nail down the first shingle. All of this inactivity followed his initial misrepresentation that the roof needed to be replaced in the first place. After a multitude of later telephone calls and false promises, Dennos could only say, "Yes, I know," when Bradley's lawyer accused him of "ripping [Bradley] off." App. at 56. Upon these facts, a rational factfinder could find Dennos guilty of construction fraud.

## B. SINGLE-LARCENY DOCTRINE

Dennos also argues that, even if he committed construction fraud, the single-larceny doctrine limits his guilt to one count of construction fraud, not two. Given the unique facts of this case, we disagree.

We begin our analysis by acknowledging, with approval, Dennos's underlying premise: The single-larceny doctrine was a well-recognized doctrine under English common law[4] and,

---

[3] <u>See</u> generally <u>Rader</u>, 15 Va. App. at 330-31, 423 S.E.2d at 210-11; <u>Norman v. Commonwealth</u>, 2 Va. App. 518, 521, 346 S.E.2d 44, 46 (1986).

[4] <u>See</u> <u>Acey v. Commonwealth</u>, 29 Va. App. 240, 248, 511 S.E.2d 429, 432 (1999) (recognizing the "common law of England" as the source of the single-larceny doctrine). <u>See</u> generally 2 Joel Prentiss Bishop, <u>New Commentaries on the Criminal Law</u> § 889, at 518 (8th ed. 1892); 1 Matthew Hale, <u>The History of the Pleas of the Crown</u> 530-31 (1800).

thus, continues to inform our understanding of the proper unit of prosecution in larceny cases.[5]

The doctrine sometimes favors the prosecution, by permitting more than one larceny count,

Moore v. Commonwealth, 59 Va. App. 795, 806, 722 S.E.2d 668, 674 (2012) (affirming

convictions based on a "series of single impulses"), and at other times it favors the accused, by

disaggregating a single felonious grand larceny into several misdemeanor petit larcenies, West v.

Commonwealth, 125 Va. 747, 755, 99 S.E. 654, 656 (1919) (noting the defendant's effort to

"separate the [larceny] offense into separate units so as to reduce the grade and punishment of

the crime").[6]

In all of its applications, however, the single-larceny doctrine carries the same meaning:

A "series of larcenous acts" can constitute a "single larceny" if the factfinder reasonably

concludes that "the several acts [were] done pursuant to a single impulse *and* in execution of a

general fraudulent scheme." Id. at 754, 99 S.E. at 656 (emphasis added). The standard is in the

conjunctive. It is not enough for a series of larcenous acts to take place during the execution of a

general fraudulent scheme. Each act must be the product of a common single impulse. The

doctrine thus does not apply to larcenous acts that are part of a general fraudulent scheme but not

---

[5] "As early as 1776, 'the common law of England' was 'considered as in full force' in Virginia, 'until the same shall be altered by the legislative power of this colony.'" Ferrell v. Commonwealth, 62 Va. App. 142, 145, 743 S.E.2d 284, 286 (2013) (quoting 9 Statutes at Large of Virginia 127 (W. Hening ed. 1821)). Virginia still recognizes by statute that the "common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-200; see Satterwhite v. Commonwealth, 56 Va. App. 557, 560, 695 S.E.2d 555, 556-57 (2010). "This principle is older than the Commonwealth itself." Taylor v. Commonwealth, 58 Va. App. 435, 443-44, 710 S.E.2d 518, 522 (2011) (citation omitted).

[6] The doctrine arose in cases in which a defendant, facing the prospect of a felony conviction that could lead to his execution (the historic penalty for felonies), sought to divide the thefts into multiple petit larcenies and thereby avoid a value aggregation that would elevate the charge to a grand larceny. See 1 William Hawkins, A Treatise of the Pleas of the Crown 150-51 (1824) (citing Petrie's Case, (1784) 168 Eng. Rep. 249 (K.B.) 250; 1 Leach 294, 294).

individually the product of a single impulse.  See, e.g., Moore, 59 Va. App. at 805, 722 S.E.2d at

673; Bragg v. Commonwealth, 42 Va. App. 607, 612-13, 593 S.E.2d 558, 560 (2004);

Sagastume v. Commonwealth, 27 Va. App. 466, 470-71, 499 S.E.2d 586, 588 (1998).

When reviewing a factfinder's decision on this issue, we apply the same deferential

standard of appellate review generally applicable to factual findings.  We consider whether the

factfinder could reasonably conclude that the thefts occurred at different locations, with different

victims, at different times, or under different conditions.  See Acey v. Commonwealth, 29

Va. App. 240, 247, 511 S.E.2d 429, 432 (1999).  We also take into account whether "intervening

events occurred between the takings."  Moore, 59 Va. App. at 804, 722 S.E.2d at 673 (internal

quotation marks omitted).  The analysis must be further calibrated to the language of the

construction fraud statute.  Code § 18.2-200.1 speaks of "an" advance of money and "a"

fraudulent promise of performance.  The text of the statute thus requires that we add to our

single-impulse analysis whether there was more than one unreturned advance of money and

more than one fraudulent promise.  No one factor or combination of factors is indispensable.

The "primary factor," essential to the *mens rea* element of the larcenous crime, is the "intent of

the thief."  Bragg, 42 Va. App. at 612, 593 S.E.2d at 560 (internal quotation marks omitted).

In this case, the trial court sitting as factfinder concluded that Dennos committed two

larcenous acts that were not done both pursuant to a single impulse and in the execution of a

general fraudulent scheme.  The evidence fully supports the rationality of this finding.  In his

first meeting with Bradley, Dennos demanded and received an advance of $1,000, the full price

for the roof-sealing job.  He cashed the check the same day, yet made no preparations to use the

funds to begin, much less to complete, the job.  Instead, he returned unannounced the next day

and misrepresented that Bradley needed a new roof — which, had it been true, would have been

true the day before as well.  Nothing had changed.  He conducted no new inspection, found no new damage, and did not explain why his opinion had changed.  Even so, Dennos convinced Bradley to execute a new contract and to give him another $1,800 advance.

In short, there were two advances of money, on two separate dates, involving two different promises.  From these facts, a rational factfinder could conclude there were two separate larcenous impulses.  To be sure, it is easy to see how one followed the other.  During their first meeting, Dennos persuaded Bradley to pay 100% of the contract price ($1,000) for sealing the roof before he began any work.  After having such success with an overly trusting victim, Dennos decided the next day to further exploit her credulity by making a new and different promise (to replace the roof) and by raising the ante with a new and more costly advance ($1,800).  For these reasons, the trial court did not violate the single-larceny doctrine by finding Dennos guilty of two separate counts of construction fraud.

### III.

Because the evidence was sufficient to convict Dennos of construction fraud and to support two separate counts, we affirm both of his convictions.

<u>Affirmed.</u>