UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, AtLee and Malveaux
Argued at Richmond, Virginia


JERNEIL LESLIE MOODY

v.        Record No. 1637-15-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 21, 2017


FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
Nathan C. Lee, Judge

Andrew R. Page (Randall Page, P.C., on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury in the Circuit Court of Greensville County ("trial court") found appellant Jerneil

Leslie Moody guilty of one count of statutory burglary, one count of grand larceny, and one

count of grand larceny of an automobile. The trial court sentenced Moody to five years

imprisonment for each count, totaling an active sentence of fifteen years. On appeal, he argues

that the trial court erred in finding (1) the "single larceny doctrine" did not apply to the theft of

the automobile, and (2) the evidence sufficient for his convictions because the testifying

witnesses were inherently incredible. For the following reasons, we disagree and affirm.

I. BACKGROUND

Three individuals, Moody, Alexus Hamlette, and Saquan Tyler, broke into a residence

and stole a variety of items from inside the home, including firearms, televisions, video games,

and a jar of coins. Hamlette testified that she, Moody, and Tyler had intended to take valuable

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

items, such as "[g]ames, TVs, laptops, guns, money," to sell. However, as she exited the house, she saw Moody putting the stolen goods into a white Suburban sports utility vehicle parked in the driveway. She testified that they had not previously discussed stealing a vehicle. When they departed, Hamlette and Tyler rode in Hamlette's car, while Moody drove the Suburban. They drove to Tyler's house to deposit some of the stolen goods. Moody later parked the Suburban in some tall grass, which was the last time Hamlette saw the stolen vehicle.

Other witnesses testified to Moody's efforts to sell the stolen Suburban. James Sexton testified that Moody approached him seeking to sell the Suburban for parts.[1] Moody took Sexton to the vehicle, and they removed its tags. Sexton admitted that he swapped these plates with ones from a family vehicle. He and Moody drove the vehicle to Jermaine Parker's house. Parker testified that Moody and Sexton brought him the stolen Suburban so he could remove the engine. He said that Sexton told him the car belonged to his deceased grandmother. Finally, Terri Robinson testified that she needed an engine for her truck, and Sexton had told her he had one from a wrecked Suburban. She went to Parker's, where Moody, Sexton, and Parker were present, and they negotiated a possible sale.

Moody moved to strike the charges. The trial court denied the motion to strike and found that the theft of the vehicle and the theft of the other goods inside the home were distinct, and thus the single larceny doctrine did not apply. The jury convicted Moody of one count of statutory burglary, one count of grand larceny, and one count of grand larceny of a motor vehicle, and recommended sentences of five years in prison for each charge. The trial court accepted the verdict and imposed the recommended sentences.

---

[1] Sexton also testified that Moody told him that he had also stolen guns, but had thrown them into a creek. A dive team later recovered the weapons from that location.

## II. ANALYSIS

### A. *Single Larceny Doctrine*

The single larceny doctrine concerns "[w]hether the larceny of multiple items at or about the same time from the same general location constitutes a single larceny or multiple offenses," and is "an issue that most courts have addressed early in the development of their criminal jurisprudence." Schwartz v. Commonwealth, 41 Va. App. 61, 72, 581 S.E.2d 891, 896 (2003) (quoting Richardson v. Commonwealth, 25 Va. App. 491, 495, 489 S.E.2d 697, 699 (1997) (*en banc*)). "The overriding principle behind the single larceny doctrine is to prevent the state from aggregating multiple criminal penalties for a single criminal act." Id. (quoting Richardson, 25 Va. App. at 496, 489 S.E.2d at 700).

"When reviewing a fact[-]finder's decision on [the single larceny doctrine], we apply the same deferential standard of appellate review generally applicable to factual findings." Dennos v. Commonwealth, 63 Va. App. 139, 148, 754 S.E.2d 913, 917 (2014). We presume the fact-finder's interpretation of the evidence is correct, and we will only reverse if it was "plainly wrong or without evidence to support it." Ervin v. Commonwealth, 57 Va. App. 495, 503, 704 S.E.2d 135, 139 (2011) (quoting Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005)).

When assessing the applicability of the single larceny doctrine, "[t]he primary factor to be considered is the intent of the thief and the question to be asked is whether the thefts, although occurring successively within a brief time frame, were part of one impulse." Richardson, 25 Va. App. at 497, 489 S.E.2d at 700. When determining whether the thefts were part of one impulse, we consider "the location of the items stolen, the lapse of time between their taking, the general and specific intent of the thief, the number of owners, and whether intervening events occurred between the takings." Id.

Here, the jury did not err in finding that the vehicle theft was not part of the same impulse as the other grand larceny. To the contrary, the evidence shows that Moody, Hamlette, and Tyler conspired to break into a home to steal items that could be readily pawned or otherwise sold. During the burglary, Moody, on his own initiative, and contrary to the initial plan of the confederates, stole the Suburban. The vehicle was the only stolen item located outside the residence. Moody alone drove the stolen car. Neither Hamlette nor Tyler participated in selling the stolen vehicle. Instead, Moody enlisted others to do so. Together, the evidence supports a conclusion that the theft of the vehicle and the other grand larceny were not "part of one impulse."

The facts here are comparable to Sagastume v. Commonwealth, 27 Va. App. 466, 499 S.E.2d 586 (1998). In that case, the Court upheld a trial court finding that the theft of a vehicle was distinct from the theft of items within a residence, and thus the single larceny doctrine did not apply. The Court held:

> In the instant case, the record indicated that the various larcenies of the watches, jewelry, and other personal property occurred inside the house, and the evidence supported the inference that the purpose of the thefts was to sell the items, or possibly in the case of the rifles, to use them for protection. The jury could also have inferred that the larceny of the [vehicle] occurred at a later time, outside the home, and the intent evinced by this theft was to steal the car to transport appellant away from the scene of his crimes. Consequently, the jury could reasonably have concluded that, despite any "general scheme" on the part of appellant, "each [theft] was a separate and discrete offense and was not part of the same impulse or continuous larcenous act at the same location."

Id. at 472, 499 S.E.2d at 589 (second alteration in original) (quoting Richardson, 25 Va. App. at 498, 489 S.E.2d at 701). We find this reasoning persuasive here, and as such, find no error in the jury's conclusion that the theft of the Suburban and the theft of the items from within the home was not part of one impulse, and thus that the single larceny doctrine did not apply.

B. *Witness Credibility*

Moody argues that the jury should have disbelieved Hamlette's and Sexton's testimony, because both stood to benefit from their testimony against him. Hamlette, who was a juvenile at the time of the burglary and larcenies, testified in exchange for the Commonwealth's agreement not to try her as an adult. Sexton, who was also a juvenile at the time of the crimes, faced no charges related to his role in the sale of the Suburban, although this was not the result of any agreement with the Commonwealth concerning his testimony against Moody.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). "The trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." English v. Commonwealth, 43 Va. App. 370, 371, 598 S.E.2d 322, 323 (2004) (citations omitted). "We also accept the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" Nobrega v. Commonwealth, 271 Va. 508, 518, 628 S.E.2d 922, 927 (2006) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)). Furthermore, "[i]t is well settled in Virginia that an accused may be convicted upon the uncorroborated testimony of an accomplice." Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 15 (1987) (quoting Johnson v. Commonwealth, 224 Va. 525, 527, 298 S.E.2d 99, 101 (1982)). We must affirm the verdict unless the fact-finder was plainly wrong or its judgment unsupported by the evidence. Ervin, 57 Va. App. at 503, 704 S.E.2d at 139.

Here, the jury heard testimony regarding the benefits Hamlette received in exchange for her testimony, and knew that Sexton had not been charged for his role in Moody's crimes. The jury was accordingly able to take that into account when weighing their credibility. Although

Moody's assignment of error states that their testimony "conflicted," he fails to point to any conflict, and no conflict is apparent. To the contrary, the testimony presented a cohesive and credible narrative of what transpired. The mere fact that witnesses receive some benefit in exchange for their testimony, by itself, does not vitiate their credibility. We see no error and affirm.

### III. CONCLUSION

The trial court did not err in denying Moody's motion to strike, and the jury was not plainly wrong in finding the evidence sufficient to convict. Accordingly, we affirm Moody's convictions.

<u>Affirmed</u>.