COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Malveaux and Senior Judge Annunziata
Argued at Norfolk, Virginia

UNPUBLISHED

CHERESA D. YOUNG

v.      Record No. 1744-17-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROSEMARIE ANNUNZIATA
OCTOBER 30, 2018

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

W. McMillan Powers, Assistant Public Defender, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.

Cheresa D. Young, appellant, appeals her convictions of obtaining money by false pretenses and making a false statement used for determining rights to payment from Medicaid. Appellant contends that the trial court erred by allowing a material witness, Christine Elliott, to testify after an assistant attorney general caused two witnesses to confer about potential evidence after the trial court "separated" the witnesses. Appellant also argues that the trial court erred by denying her motion to strike the evidence because the evidence was insufficient to prove beyond a reasonable doubt that she received money by false pretenses from Medicaid or that she made any false statements to Medicaid. For the reasons that follow, we affirm appellant's convictions.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth." Dennos v. Commonwealth, 63 Va. App. 139, 141, 754 S.E.2d 913, 914 (2014) (quoting

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). The Court must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Id. at 141-42, 754 S.E.2d at 914 (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

In this light, the evidence adduced at trial established that appellant worked for All About You Home Care (AAYHC) as a personal care aide, providing in-home medical assistance. AAYHC assigned appellant to assist K.C. on Mondays, Wednesdays, and Fridays, two to four hours each visit, starting in December of 2013. Maria Weiss, K.C.'s mother and primary caregiver, testified that she kept a personal log of when appellant came to their home to provide assistance, noting the time, or number of hours, of her visits. Occasionally, appellant attended to K.C. on a Tuesday or Thursday if doctors' appointments conflicted with the normal schedule, but appellant never worked on weekends.

Appellant prepared weekly time sheets reporting the hours she worked and she presented them to Weiss, who would sign the completed time sheets. Weiss testified that when she signed the time sheets they accurately reflected the days and hours appellant worked. Jacquelyn Melson, an investigator for the Attorney General's Office in the Medicaid Fraud section, showed Weiss signed time sheets that reflected appellant's reported hours. Weiss stated that some of the time sheets were signed with her name, but that the signature was not hers; she further opined that the time sheets admitted at trial all had appellant's signature, noting, however, that she was "not a handwriting expert." Weiss compared the time sheets to her personal log and disputed several entries on the time sheets, either claiming that the time sheets included dates on which appellant did not work or times that exceeded the total hours appellant worked.

For example, one of the time sheets reported that appellant worked on March 28, 2014, from 8:30 a.m. until 4:30 p.m. Weiss recalled that appellant asked for time off on March 28, 2014, to attend a funeral and she later showed Weiss the program, which indicated the funeral was on that date at 11:00 a.m. Weiss also testified that she never requested or received respite care and she disputed six documents indicating appellant provided respite care, again noting it was not her signature on the time sheets.

Monica Basemore, an employee of AAYHC, testified that she collected time sheets from the medical aides and turned them into the billing and payroll manager, Edward Phillips. Basemore denied altering any time sheets, noting that if there were problems with any time sheets, the billing agent would contact the aide to correct them. Basemore contacted Weiss when she received time sheets indicating that Weiss and K.C. had received respite care. Basemore explained that a primary caregiver was required to use all personal care hours before requesting and using respite care. When Basemore told Weiss she needed to use her personal care hours before respite care, Weiss advised Basemore that she had never requested respite care.

Phillips testified that when he received the time sheets, he compared them to the patient's "plan of care," which indicated the maximum number of hours and the services authorized for care. If he found inaccuracies, he would return the time sheet to the medical aide; he did not alter any time sheets that came into his possession, including the time sheets purportedly submitted by appellant and introduced at trial. Once he determined that the time sheet was accurate, he electronically submitted a claim to Medicaid for payment for the medical services rendered by the AAYHC employee reported on the time sheet. Medicaid paid AAYHC, and AAYHC paid the medical aide based on the time sheet. Phillips testified that he left his employment with AAYHC over concerns that payroll payments were being made to people, including the husband of the owner of AAYHC, who were not listed as employees of the company.

Linda Elliott (L. Elliott), the owner of AAYHC, tendered copies of appellant's time sheets from K.C.'s file to Melson when the discrepancies were identified. Appellant never advised L. Elliott that she was being overpaid. L. Elliott confirmed that the claims to Medicaid were based on the time sheets and that the aide's payments were determined by the time sheets. L. Elliott testified that her mother died in March of 2014 and the funeral was on March 28, 2014, at 11:00 a.m. and she confirmed that appellant attended the funeral. She also stated that her husband worked for the company "after hours" and that he was listed as an employee on the payroll, despite Phillips's claim.

Melson testified that she spoke with appellant about the suspect time sheets. Appellant identified her signature on some of the time sheets and denied submitting others. Appellant told Melson that Weiss kept a log of all her hours, and appellant confirmed that she did not work weekends, early morning or late afternoon hours, or provide respite care. Appellant provided a paystub to Melson as proof that she was not being overpaid, but that paystub matched a time sheet reflecting hours worked on a weekend. Appellant denied that it was her signature on that time sheet.

Christine Elliott (C. Elliott) worked for the Virginia Department of Medical Assistance Services, commonly known as Medicaid, as a program analyst. C. Elliott identified a "claims history" document that memorialized all payments to AAYHC in reference to K.C. during the relevant time period. The form did not identify which aide performed the services, but the dates could be cross-referenced with the aide's submitted time sheets. Comparing Weiss's log book, the submitted time sheets, and Medicaid's claims history data, Melson calculated that the total loss to Medicaid was $4,486.23, based on overpayment for hours claimed, but not performed. Some of that loss was recovered through reimbursement by AAYHC for the respite care claims.

Appellant testified at trial, stating that she did not work weekends, early morning hours, or late into the afternoon. Appellant denied that she signed Weiss's signature or that she overstated her hours of service. Appellant denied changing the time sheets after Weiss had signed them. When recounting her conversation with Melson, appellant claimed Melson showed her only one time sheet and that she disputed that it was her signature on it.

SEQUESTERED WITNESS

Upon appellant's motion to separate the witnesses at the start of trial, the trial judge ordered, "All witnesses in this case, step outside. All witnesses step outside." Directly thereafter, the trial judge admonished, "And, counsel, after the first witness is sworn, you're not to discuss this case with any of the witnesses on either side . . . except for giving them directions or telling them when they will testify." After Phillips testified, the trial judge ordered the proceedings to be in recess "until 2:15." Subsequent to that recess, Melson took the stand for the first time and the trial court took another recess after her testimony. When the trial court came back in session, appellant's counsel alerted the trial court that she had seen the Commonwealth's next witness, C. Elliott, and Melson looking at a "binder" in the witness room during the recess that was to end at 2:15 p.m. The trial court allowed counsel to question C. Elliott about the circumstances of what occurred in the witness room, and C. Elliott confirmed that she spoke to Melson about "one paper." David Tooker, an assistant attorney general in the Medicaid Fraud section, who was assisting the Commonwealth in the prosecution of this case, interjected that he had asked Melson to

> make sure that Ms. Elliott was familiar with the . . . claims data sheet which has been referenced in Ms. Melson's testimony, but at that point that document had not been introduced. It was not based on testimony. It was just to make sure that she was familiar with the claims data that comes from her agency.

Upon further inquiry, C. Elliott stated that Melson asked her about a spreadsheet and whether she called it a "claim history" and whether a second spreadsheet showed Medicaid's remittance history

- 5 -

paid to a provider. The trial court clarified that the conversation took place prior to Melson's testimony and overruled appellant's objection to C. Elliott's testimony.

Appellant contends that the trial court erred by allowing C. Elliott to testify because the witnesses violated the separation order by discussing evidence at the direction of Tooker.[1] On brief, appellant asserts that the trial court "made it very clear to all witnesses and counsel that there was to be no communication with the witnesses" citing the trial judge's statement, "You're not to discuss this case with any of the witnesses on either side." On brief, appellant also claims that Melson had already testified and that Tooker's request of Melson to inquire about the documents was to ensure that C. Elliott's testimony would be consistent with Melson's. Neither assertion is supported by the record.

The record clearly reflects that the trial court first told the witnesses to "step outside" the courtroom, followed by the statement, "And, *counsel*, after the first witness is sworn, you're not to discuss this case with any of the witnesses on either side. I think you both understand that?" The record does not indicate that the trial judge made any similar statement to the witnesses as appellant claims; the trial judge told them to step outside the courtroom, thereby only excluding them from the courtroom. Further, appellant's counsel observed Melson and C. Elliott talking during the recess that was to end at 2:15 p.m., which was at the conclusion of Phillips's testimony and before Melson had testified. The objection to C. Elliott's testimony came after Melson's testimony and just prior to the Commonwealth calling C. Elliott to testify, when counsel realized that she was a

---

[1] Appellant's assignment of error states, "The trial court erred in allowing material witness, Christine Elliott, to testify after the Attorney General asked another witness, Jacquelyn Melson, to speak with Elliott and make certain Elliott was 'familiar' with the evidence after opening statements and after the [trial] court had separated the witnesses." The Commonwealth argues that appellant did not preserve this issue for appeal because she did not specifically argue that Tooker's conversation with Melson disqualified C. Elliott from testifying, citing Rule 5A:18. The fact that Tooker directed Melson to talk to C. Elliott was a factor before the trial court in deciding whether C. Elliott should be allowed to testify and, thus, the Court finds the issue was preserved for appeal.

witness in the case.  Thus, the Court finds that the witnesses were not advised not to discuss the case and that Melson had not yet testified when the discussion of the documents occurred.  With these clarifications of the record, the Court next considers whether the trial court abused its discretion by allowing C. Elliott to testify after the conversation with Melson.

Code § 19.2-265.1 directs that "[i]n the trial of every criminal case, the [trial] court . . . may upon its own motion and shall upon the motion of either the attorney for the Commonwealth or any defendant, require the exclusion of every witness to be called," noting some exceptions.  Virginia Rule of Evidence 2:615 gives the same directive about excluding witnesses and adds that the trial court "*may* also order that each excluded witness be kept separate from all other witnesses." (Emphasis added).  Neither Code § 19.2-265.1 nor Rule 2:615 mandates that the witnesses not speak about their testimony, but Rule 2:615 allows a trial court to make such an order.  "[T]he 'purpose of excluding the witnesses from the courtroom is, of course, to deprive a later witness of the opportunity of shaping his testimony to correspond to that of an earlier one.'"  Bennett v. Commonwealth, 236 Va. 448, 465, 374 S.E.2d 303, 314 (1988) (quoting Huddleston v. Commonwealth, 191 Va. 400, 405, 61 S.E.2d 276, 279 (1950)).

> Orders excluding witnesses during the taking of testimony play an important part in our system of justice and should be enforced. However, if their enforcement is to work justice . . . care must be taken by the trial courts *and by counsel* to insure that those orders are plainly announced and that their effect is made clear to all witnesses.

Jury v. Commonwealth, 10 Va. App. 718, 722, 395 S.E.2d 213, 216 (1990) (emphasis added).

"A trial court has discretion to decide whether a witness who violates an exclusion order should be prevented from testifying.  Factors to be considered include whether prejudice will result to the defendant and whether the violation of the rule resulted from intentional impropriety."  Id. at 721, 395 S.E.2d at 215.  "It is also pertinent whether the out-of-court comments concerned any substantive aspect of the case and whether they had any effect on the witness' testimony."  Bennett,

236 Va. at 465, 374 S.E.2d at 314. A violation of an exclusion or separation order does not automatically disqualify a witness from testifying. Brickhouse, 208 Va. at 537, 159 S.E.2d at 614.

Appellant made a motion to "separate" the witnesses. The trial court ordered the witnesses to "step outside" the courtroom, thereby excluding the witnesses from the courtroom. As noted above, the trial court did not order the witnesses not to discuss their testimony; rather, the trial court told all counsel, including Tooker, not to discuss the case with any witness once the trial court swore in the first witness. Appellant's motion was for separation, but the trial court ordered exclusion. It was incumbent upon appellant to insure the proper order had been given and that its effect was made clear. Jury, 10 Va. App. at 722, 395 S.E.2d at 216. Since Melson and C. Elliott had not been ordered not to discuss the case, they were not in violation of a separation order.

Nevertheless, Tooker directed Melson to discuss potential evidence with C. Elliott, contrary to the trial court's order to counsel not to discuss the case with any witnesses once the first witness was sworn. Tooker's actions caused the two witnesses to confer about potential evidence. Even accepting Tooker's actions as a violation of the trial court's orders, it would not be an abuse of discretion to allow C. Elliott to testify if appellant suffered no prejudice. See Bennett, 236 Va. at 465, 374 S.E.2d at 314; Brickhouse, 208 Va. at 537-38, 159 S.E.2d at 614.

Tooker proffered that he asked Melson to inquire whether C. Elliott was "familiar" with the claims history spreadsheet. C. Elliott proffered that Melson asked her if she referred to the spreadsheet as a claim history and whether another document contained remittance information to providers, which C. Elliott confirmed was correct. C. Elliott stated that was the entirety of the conversation. Neither witness had testified at that point, and C. Elliott's proffer did not indicate that the substance of the information in those two documents was discussed relevant to appellant's case. The record does not indicate any conformity of testimony except perhaps regarding the title of and the general content contained in the spreadsheets. The two did not discuss the relevance or import

of the information contained in the documents relative to appellant's case. Thus, there is no evidence that the brief conversation shaped, or had an adulterating effect on, C. Elliott's testimony such that the Court finds that appellant suffered no prejudice. Therefore, it was not an abuse of discretion for the trial court to allow C. Elliott to testify.

SUFFICIENCY OF THE EVIDENCE

Appellant argues that the evidence was insufficient to prove that she received money by false pretenses from Medicaid or that she made any false statements to Medicaid. In support of her argument, appellant contends that the evidence failed to show that she received any money for the fraudulent hours reported on the time sheets. Appellant asserts that she denied making those entries on the time sheets and that Weiss testified that when she signed appellant's time sheets all hours were accurate. Other people processed the time sheets once appellant turned them in. Appellant further suggests that L. Elliott had access to submit forms for payment through Medicaid and that Phillips testified that her husband was receiving payments when he was not on AAYHC's payroll.

When reviewing a challenge to the sufficiency of the evidence, this Court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it. See Farhoumand v. Commonwealth, 288 Va. 338, 351, 764 S.E.2d 95, 102 (2014). "We examine a trial court's fact-finding 'with the highest degree of appellate deference.'" Dennos, 63 Va. App. at 144, 754 S.E.2d at 916 (quoting Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006)). With these principles in mind, "[a]n appellate court thus does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Dennos, 63 Va. App. at 144, 754 S.E.2d at 916 (quoting Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009)). "[I]f there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from

the conclusions reached by the finder of fact at the trial." Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 826 (2014) (quoting Lawlor v. Commonwealth, 285 Va. 187, 224, 738 S.E.2d 847, 868 (2013)). Further, "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015).

Numerous time sheets were admitted into evidence reflecting fraudulent claims that appellant worked with K.C. when she in fact did not perform that work. Appellant confirmed that her signature was on some of those time sheets. When appellant presented a paystub to Melson, the paystub corresponded to a time sheet that had fraudulent hours listed for aid provided on a weekend. Appellant admitted that she never worked for K.C. on a weekend, though she also claimed that the signature on that particular time sheet was not hers. Appellant testified at trial and denied submitting any false time sheets, providing the trial court the opportunity to evaluate appellant's credibility. The trial court also heard the evidence in support of appellant's hypothesis of innocence that someone, most likely L. Elliott, altered appellant's valid time sheets; notably including Phillips's suspicion that L. Elliott's husband was being paid by the company although he was not on the payroll list.

The trial court, by its verdicts, rejected appellant's testimony and hypotheses of innocence. It is the fact finder's exclusive duty to determine credibility because the fact finder has the "unique opportunity to observe the demeanor of the witnesses as they testify." Dalton v. Commonwealth, 64 Va. App. 512, 525-26, 769 S.E.2d 698, 705 (2015) (quoting Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993)). "The factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal his guilt." Abdo v. Commonwealth, 64 Va. App. 468, 479 n.5, 769 S.E.2d 677, 682 n.5 (2015) (quoting Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999)). Further, the trial court's

rejection of the hypotheses of innocence is binding on appeal because it was not plainly wrong or without evidence to support it. See Ervin v. Commonwealth, 57 Va. App. 495, 519, 704 S.E.2d 135, 147 (2011) (*en banc*) (explaining that rejection of a hypothesis of innocence is binding on appeal unless plainly wrong, even when the record contains some supporting evidence). The record supports the trial court's findings.

Basemore, Phillips, and L. Elliott testified that they did not alter appellant's time sheets. Phillips and L. Elliott explained that, once Medicaid remitted payment on claims generated from the time sheets, appellant was paid according to the total hours reflected on her time sheets. Appellant admitted to Melson that she did not work in the early morning, late afternoon, or on weekends. When appellant told Melson she had never been paid for work she did not perform, she presented a paystub that in fact included payment that corresponded to a time sheet that reflected appellant worked on a weekend. This evidence, taken in its entirety, supported the trial court's finding that appellant submitted the fraudulent time sheets, used to generate payments from Medicaid, and received money based on her false claims of services rendered.

CONCLUSION

The trial court did not abuse its discretion by allowing C. Elliott to testify despite her brief conversation with Melson, as the record does not establish that her testimony was substantially affected so as to cause prejudice to appellant. Additionally, the trial court reasonably concluded that appellant made false statements on the time sheets causing her employer to make fraudulent claims to Medicaid for payment and that appellant received money based on the false pretenses that she performed more work than she, in fact, rendered. Thus, the evidence was sufficient to support the convictions of obtaining money by false pretenses and making a false statement used to determine rights to payment from Medicaid. Accordingly, we affirm.

Affirmed.